Filed 4/20/22  P. v. Dawson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AMOURA DOMINQUE DAWSON,<br><br>    Defendant and Appellant. | C093472<br><br>(Super. Ct. No. 11F07238) |

After simultaneous but separate jury trials, defendants Amoura Dominique Dawson and Adrienne Marquis Boulware were convicted of second degree murder and torture for beating Audie Hogue to death.  The trial court sentenced defendant to a term of 15 years to life in prison.  Defendant did not appeal her judgment.  Boulware appealed and we affirmed the judgment.  (*People v. Boulware* (March 3, 2015, C075063) [nonpub. opn.] (*Boulware*).)  We have granted defendant's request to incorporate by reference the record in *Boulware*, (case No. C075063) in the instant appeal.

1

In 2019, defendant filed a petition for resentencing under Penal Code section 1170.95. (Statutory section citations that follow are found in the Penal Code.) The trial court denied the petition, finding that because the jury was never instructed on felony murder or the natural and probable consequence doctrine, defendant failed to make a prima facie showing of eligibility for resentencing.

On appeal, defendant contends the trial court erred in denying the petition. We affirm the trial court's order.

FACTS AND HISTORY OF THE PROCEEDINGS

Defendant was charged with first degree murder and torture for her role in stomping, punching, and kicking Audie Hogue to death. (Pen. Code, §§ 187, 206.) Defendant and codefendant Boulware both kicked and hit Hogue until he could not get up; he was found dead the next morning. Hogue had blunt force injuries to his head, neck, and torso and sustained multiple serious internal injuries. (*Boulware, supra*, C075063.) The jury was instructed on direct aider and abettor liability as well as malice aforethought murder but not instructed on felony murder or the natural and probable consequences doctrine. The jury found defendant guilty of second degree murder and torture.

In her petition for resentencing pursuant to section 1170.95, defendant averred that (1) a complaint or information was filed against her that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) at trial, she was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; and (3) she could not now be convicted of second degree murder because of changes made to sections 188 and 189 effective January l, 2019.

The trial court denied the petition, finding that defendant's jury was not instructed on either felony murder or the natural and probable consequences doctrine of accomplice

2

liability. Instead, the trial judge instructed on malice aforethought murder, which requires express or implied malice using CALCRIM No. 520, and on direct aiding and abetting, using CALCRIM No. 401, which requires intent to aid the accomplice in the commission of the offense. As such, defendant failed to set forth a prima facie case for relief under section 1170.95.

## DISCUSSION

### I

*Conviction Under the Natural and Probable Consequences Doctrine*

Defendant claims the trial court erred in denying her section 1170.95 petition at the prima facie stage, as she was not ineligible for relief as a matter of law. Defendant does not contest the trial court's ruling as it relates to the felony-murder rule; she concedes she was not prosecuted or convicted under that theory. Instead, she claims that despite the fact that the jury was not specifically instructed on the natural and probable consequences doctrine, the practical combined effect of the jury instructions regarding aiding and abetting and second degree murder permitted the jury to find her guilty under a natural and probable consequence theory where she aided and abetted Boulware's assault of Hogue—the natural and probable consequence of which was Hogue's death. She argues that eligibility for relief under section 1170.95 is predicated upon showing a conviction based on a now-invalid legal doctrine, not whether a particular jury instruction was used. We conclude that the trial court did not err in denying the petition after finding defendant is not eligible for relief under section 1170.95.

The Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015,

3

§ 1(f).)  The criminal liability of direct aiders and abettors did not change under Senate Bill No. 1437.  (*People v. Offley* (2020) 48 Cal.App.5th 588, 595-596.)

As relevant to this case, Senate Bill No. 1437 eliminated liability for murder under the natural and probable consequences doctrine.  (*People v. Offley, supra,* 48 Cal.App.5th at p. 595.)  Under that doctrine, a person who knowingly aided and abetted a crime, the natural and probable consequence of which was murder, could be convicted of not only the target crime but also of the resulting murder, irrespective of whether he or she harbored malice aforethought.  (*People v. Gentile* (2020) 10 Cal.5th 830, 843-845; *Offley*, at p. 595.)  However, Senate Bill No. 1437 amended section 188 to provide that "[e]xcept as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2.)  Critically, "Senate Bill No. 1437 changed the circumstances under which a person could be convicted of murder without a showing of malice, but it did not exclude from liability persons convicted of murder for acting with implied malice." (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1057, review dismissed, and abrogated on another ground by *People v. Lewis* (2021) 11 Cal.5th 952, 967 (*Lewis*).)

Here, the jury was instructed, in part, that it could find defendant guilty of second degree murder if it found defendant had express or implied malice.  Defendant had implied malice if:  (1) she intentionally committed the act; (2) the natural and probable consequences of the act were dangerous to human life; (3) at the time she acted, she knew her act was dangerous to human life; and (4) she deliberately acted with conscious disregard for human life.  (See CALCRIM No. 520.)

Contrary to defendant's claim, the fact that the court's instruction on implied malice and second degree murder contained natural and probable consequences language does not mean the jury was instructed on natural and probable consequences murder. The "natural consequences" language in the instructions "does not transform

4

[defendant's] conviction into one for murder under the natural and probable consequences doctrine within the meaning of section 1170.95." (*People v. Soto, supra*, 51 Cal.App.5th at p. 1059.) Implied malice murder and natural and probable consequences murder are two distinct concepts. (*Id*. at pp. 1055-1059.) Under the natural and probable consequences doctrine as applied to aiding and abetting, the mens rea of an aider and abettor towards the killing was irrelevant and liability arose when "a reasonable person in the defendant's position *would have or should have known* that the charged offense was a *reasonably foreseeable* consequence of the act aided and abetted." (*People v. Chiu* (2014) 59 Cal.4th 155, 162, italics added.)

In contrast to that vicarious liability, the doctrine of implied malice requires that the perpetrator *actually appreciate* that death is the natural and probable consequence of his or her actions, and further requires that the perpetrator *knowingly acts with conscious disregard for the danger to life that the act poses. (People v. Roldan* (2020) 56 Cal.App.5th 997, 1005, review dismissed, abrogated on another ground in *Lewis, supra*, 11 Cal.5th 952, citing *People v. Smith* (2018) 4 Cal.5th 1134, 1165 [knowledge of danger and conscious disregard for human life is essential to a finding of implied malice]; *People v. Lee* (2020) 49 Cal.App.5th 254, 261 [the natural and probable consequences doctrine is not an implied malice theory], review dismissed, abrogated on another ground in *Lewis*.) Senate Bill No. 1437 did nothing to remove implied malice as a basis for a second degree murder conviction. (See *People v. Powell* (2021) 63 Cal.App.5th 689, 714 [rejecting the defendant's contention that direct aiding and abetting implied malice murder is an invalid legal theory].)

Here, the jury was not instructed on the natural and probable consequence doctrine. Nor was the jury instructed on any target crime upon which second degree murder based on a natural and probable consequences theory could be predicated.

Defendant was necessarily convicted under a still-valid theory and the court did not err in denying defendant's petition for failure to make the requisite prima facie showing under section 1170.95. (§ 1170.95, subd. (a)(3).)

## II

### *Section 1170.95 Procedures*

Defendant contends the trial court did not follow the procedure set forth in section 1170.95 because she filed a facially sufficient petition that established a prima facie case for relief and the trial court improperly misunderstood its obligation to independently determine whether the evidence established her guilt under a currently valid legal theory at a hearing pursuant to subdivision (d)(3).

The trial court appointed counsel and defendant had the opportunity for briefing before the trial court denied the petition. This satisfies the procedural requirements as set forth in *Lewis, supra*, 11 Cal.5th at pages 957, 961-963, 966-967. A trial court may deny a petition at the prima facie stage where the record of conviction contains facts refuting the allegations made in the petition. (*Id*. at p. 971.) Because the record establishes that defendant was not convicted under a now-invalid theory of murder, the record refutes defendant's claim of eligibility for relief under section 1170.95, and the trial court properly denied her petition at the prima facie stage without a hearing under subdivision (d)(3).

Nor is this conclusion impacted by the legislative changes to section 1170.95, enacted through Senate Bill No. 775 (2021-2022 Reg. Sess.). Effective January 1, 2022, Senate Bill No. 775 creates additional procedures on the pathway to relief under section 1170.95. In particular, Senate Bill No. 775 requires the trial court hold a prima facie hearing after briefing and before denying a petition. However, since the parties were able to brief the issue of eligibility, a hearing would not have assisted defendant and the

failure to hold the hearing is harmless error.  Defendant's ineligibility for relief remains the same under the new law.

DISPOSITION

The trial court's order denying defendant's petition for resentencing is affirmed.


_____

HULL, J.


We concur:


_____

RAYE, P. J.


_____

ROBIE, J.